USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/17/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

LIN XIAN WU,

Defendant.

02 Cr. 271 (GEL)

**OPINION AND ORDER**

LIN XIAN WU,

Petitioner,

-v.-

UNITED STATES OF AMERICA,

Respondent.

09 Civ. 5612 (GEL)

Henry E. Marines, Law Offices of Henry E. Marines, P.A., Miami, FL, for petitioner.

Preet Bharara, United States Attorney for the Southern District of New York (Sean S. Buckley, Assistant United States Attorney, of Counsel), New York, NY, for respondent.

GERARD E. LYNCH, District Judge:

Lin Xian Wu, a federal prisoner, moves pursuant to 28 U.S.C. § 2255 to set aside his conviction on multiple charges of robbery, conspiracy, and using a firearm in relation to the robberies, and resulting sentence to a total of 735 months' incarceration. The motion will be denied.

Lin argues that his trial attorney was ineffective in failing to advise him of his right to testify in his own defense, in failing to advise him of the catastrophic consecutive sentencing consequences of conviction on multiple firearms counts, and in failing to move for dismissal of the three robbery counts for insufficiency of the evidence of an effect on interstate commerce. None of these claims has merit.

It is useful to address first the latter two arguments, for they show the utter meretriciousness of Lin's claims. For example, Lin argues that he would have accepted a plea offer in the case, and would never have gone to trial, had his attorney advised him that if convicted of the three charges of violating 18 U.S.C. § 924(c), he faced mandatory consecutive sentences totaling 55 years in prison, in addition to whatever sentence was imposed on the robbery and conspiracy counts.[1] Lin's trial counsel flatly contradicts this, averring that she explained these charges, and the benefits of the Government's plea offer, "[o]n at least five separate occasions." (Bank Decl. ¶ 11; see also id. ¶¶ 8-14.) But there is no need to rely on the attorney's recollection, as the record discloses that Lin's sworn allegation that his attorney never explained this to him (Lin Aff. ¶ 3) is a fabrication.

Before trial, the late Hon. Richard Conway Casey, who presided over the case, conducted a hearing to assure that Lin understood the plea offer and was making a voluntary and informed decision to go to trial. (4/22/03 Tr. 3-11.) At that hearing, in Lin's presence and with a Mandarin interpreter translating the proceedings, Lin's attorney stated on the record exactly what she now repeats in her declaration on the instant motion, noting that she had "been over and over

[1] Lin and his present attorney miscalculate: actually, as there were four § 924(c) counts in the original indictment (additional convictions on charges of conspiracy and extortion, with an attendant § 924(c) charge, were reversed on appeal), and the § 924(c) counts charged that Lin brandished the weapon, the potential consecutive sentences faced by Lin totaled 82 years, not 55.

and over again with Mr. Lin" on the sentencing consequences of conviction, specifically including the fact that "if he's convicted on all four gun counts, [he faces] a minimum of 82 years on just the gun counts alone." (Id. 4.) Counsel went on to describe how she had also detailed for Lin the Government's plea offer, including an accurate description not only of the sentencing terms in the offer, but of the actual time that Lin would have to serve in light of the time he had already spent in detention and the reductions for good behavior that he could expect. (Id. 5.) Counsel noted that Lin advised her that he would not accept the Government's offer, but would be interested in a plea in which the nominal sentence was no more than ten years (id. 6) – an offer the Government understandably had no interest in making, in view of the seriousness of Lin's crimes.[2] Counsel then reiterated that even if Lin were convicted of only two of the gun charges, he would face a mandatory 32 years in prison, and that she and Lin had "discussed this in great detail" as well. (Id.)[3]

Needless to say, it is absurd to imagine that defense counsel was misrepresenting, in Lin's very presence, what she had discussed with him in earlier sessions – and even if she had been, the statements made by counsel in open court themselves put him on notice of the consequences of which he now claims to have been ignorant. Lin did not protest counsel's

---

[2] Indeed, counsel had been so concerned about Lin's refusal to accept the plea that she had earlier moved for a psychological examination of Lin, on the ground that despite her detailed explanation of the respective sentencing consequences of the Government's plea offer and of conviction after trial, Lin insisted on going to trial. (Govt. App. Ex. E.) Counsel's affirmation in support of that motion also described, albeit in less detail, her efforts to explain to Lin that he faced "90 to 100 years" in prison if convicted at trial. The Court authorized the requested examination, which resulted in a finding of competence that was affirmed on appeal. United States v. Xiao Qin Zhou, 428 F.3d 361, 379-81 (2d Cir. 2005).

[3] Counsel then diligently addressed as well Lin's decision to withdraw a previous request for new counsel. (4/22/03 Tr. 6-7.)

recitation of her prior advice. On the contrary, he specifically affirmed, in response to questioning by Judge Casey, that counsel had indeed advised him of the potential sentence:

> THE COURT: Now, you also heard what [counsel] said . . . to the subject of the plea that's been offered to you, and . . . as to the possible sentence you could face if you're convicted at trial. Do you agree that this has all been explained to you?
>
> DEFENDANT LIN: Yes.

(Id. 7.)

In order to further assure Lin's understanding of the situation, Judge Casey than asked the prosecutor to set forth the sentences that Lin would face if convicted on all counts at trial, and the nature of the Government's plea offer. The prosecutor then laid out the full details of all the charges and the sentences applicable to each, and concluded that, if convicted on all charges at trial, Lin would "be facing at least 100 years in prison." (Id. 8-9.) After this recitation, Judge Casey again directly addressed Lin, noting that "you heard what the government has said," and asked Lin whether he was choosing to go to trial "of your own free will and volition, knowing what the potential circumstances could be." Lin agreed that he was. (Id. 10.) The Court then made a finding "that both defense counsel and the government ha[d] laid out the very serious penalties that could be imposed" upon conviction at trial, and that the plea offer had also been "explained . . . with the benefit of the interpreter," and that Lin had rejected the plea offer and had "chosen, with full information and explanation of all ramifications of what possible penalties could be imposed," to go to trial. (Id. 11.)

In the face of this record, Lin's claim to have been misled by his attorney about the plea consequences is both legally and factually baseless.

The record similarly refutes the claim that counsel failed to move for a judgment of acquittal on interstate commerce grounds. The trial transcript – which Lin and his present attorney seem not to have bothered to consult – reflects that at the end of the Government's case, defense counsel made precisely the motion that Lin now falsely accuses her of failing to make:

> I also move pursuant to Rule 29 to dismiss the cases due to the failure to produce sufficient evidence to sustain any of the charges against Mr. Lin Xian Wu. In particular the government has also not satisfied the burden with respect to interstate commerce with respect to any of the charges. There has been no evidence that any of these gambling locations were involved in any kind of interstate commerce.

(Trial Tr. 552.) The motion was denied.

Nor can counsel be faulted for not arguing the point more vigorously, or for not presenting the argument on appeal, for the claim of lack of interstate commerce nexus is without merit. It is unnecessary for this Court to rehearse in detail the Government's evidence on this point, or to make an independent determination that the evidence was indeed sufficient to make out the required effect, for the Court of Appeals has authoritatively settled the point. While Lin did not raise the interstate commerce element on appeal, his co-defendant Chen Xiang did. After the defendants' first appeal resulted in reversal of their convictions on extortion charges, and a remand for resentencing, Chen contended that he had received ineffective assistance of counsel on his first appeal "because counsel failed to challenge his convictions under the Hobbs Act for insufficiency of the evidence regarding the interstate commerce element." United States v. Xiao Qin Zhou, 268 Fed. App'x 139, 141 (2d Cir. 2008). The Second Circuit rejected the claim, finding that "[a]t trial, the government provided evidence that each of the three robberies affected, or had the potential to affect, interstate commerce," and that the failure to raise the issue on appeal thus did not make out a claim of ineffective assistance. Id. Since Lin's present

claim involves the same robberies and the same evidence, the Circuit's holding authoritatively controls Lin's present claim.

It is against this background that the Court reaches Lin's claim regarding his failure to testify at trial. Although Lin's counsel formulates the claim as an argument that his trial attorney "failed to advise petitioner of his constitutional right to testify in his own defense" (Pet. Mem. 20), Lin himself does not actually attest to any such failure. Instead, he swears that he "was prepared to testify in my defense," but that his "attorney did not allow me to testify," "as I informed him [*sic*] I wanted to do." (Lin Aff. ¶¶ 6, 7, 10.) The affidavit is entirely conclusory: Lin does not discuss how his attorney "did not allow" his testimony, or what conversations, if any, were had between lawyer and client.

In contrast, trial counsel provides a detailed affidavit, setting forth exactly what she says transpired between her and Lin. According to the attorney, she advised Lin, "through the use of an interpreter, that he had a constitutional right to testify in his own defense." (Bank Aff. ¶ 15.) However, after discussions, again through an interpreter, of the facts of the case, Lin "decided that he would not testify in his own defense at trial." (Id. ¶ 16.) According to counsel, this "was a strategic decision," made by Lin after counsel had reviewed with him "the discovery produced by the Government, the 3500 material produced by the Government, statements made by [Lin] and his co-conspirators to the Government, and the possible defenses that could be presented at trial." (Id.) In particular, counsel noted that if he testified, Lin would have been subject to "cross-examination [that] could have undermined [his] defense." (Id.) Had Lin testified, for example, he would have opened the door to cross-examination about other uncharged robberies, evidence of which had been excluded, as a result of a motion by the defense, from the Government's direct case. (Id. ¶ 17.) Moreover, Lin had made incriminating statements to the

Government pursuant to a proffer agreement, under which those statements could not be used in the Government's case-in-chief, but could be used in cross-examination if Lin testified at trial. (Id. ¶ 18.) According to trial counsel, based on these considerations, Lin "determined that he did not want to testify at trial." (Id. ¶ 19.)

As the Second Circuit has noted, in habeas cases, "allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner," and an evidentiary hearing is not always required to resolve conflicts between a prisoner's "highly self-serving" affidavit and contrary evidence in the record. United States v. Chang, 250 F.3d 79, 85-86 (2d Cir. 2001). This is such a case. In light of Lin's flagrant misrepresentations of the record with respect to his other allegations, his conclusory and easily-made allegation that he was not "allowed" to testify is impossible to credit, in the face of counsel's detailed contrary declaration.

But even if Lin's assertions were accepted as fact, they cannot make out a claim of ineffective assistance. To succeed on such a claim, a petitioner must establish not only that his attorney's performance fell below an objective standard of performance, but also that he suffered prejudice, that is, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). Lin does not even attempt to meet this standard. Indeed, Lin fails to give the slightest indication, either in his affidavit or in his memorandum of law, of what his projected testimony would have been, or how it could have raised a reasonable doubt that was not otherwise present in the case. Nothing whatsoever about Lin's motion does anything to "undermine confidence in the outcome" of his trial, id., or to suggest that the strategic decision his attorney testifies that he made, after full consideration of the alternatives, was not the correct choice.

Thus, like his other claims, Lin's argument that his trial attorney was ineffective by preventing him from testifying in his own defense is without merit.[4]

## CONCLUSION

Accordingly, petitioner's motion pursuant to 28 U.S.C. § 2255 is denied. Because petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.

SO ORDERED.

Dated: New York, New York
September 17, 2009

GERARD E. LYNCH
United States District Judge

[4] Since none of Lin's claims has the slightest merit, his claim that the alleged errors of counsel taken together had the cumulative effect of denying him effective assistance (Pet. Mem. 30-31) adds nothing to his argument.