UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

CHEN XIANG AND LIN XIAN WU,

Defendant.

02 CR 271 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are Defendant Chen Xiang's ("Chen") motion
(dkt. no. 207) and Defendant Lin Xian Wu's ("Lin") motion (dkt.
no. 206), both pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for
compassionate release.  The Government opposed both motions
(dkt. nos. 210, 214), and Defendants replied (dkt. nos. 215,
216).  For the reasons set forth below, the motions are GRANTED.

I.   **Background**

a. Offense Conduct and Procedural History

i.  **Defendant Chen and Defendant Lin**

On May 29, 2003, after a two-week trial, a jury convicted
the Defendants of: (i) one count of conspiracy to commit
extortion, in violation of 18 U.S.C. § 1951 ("Count One");
(ii) one count of extortion, in violation of 18 U.S.C. §§ 2 and
1951 ("Count Two"); (iii) one count of brandishing a firearm
during the extortion charged in Counts One and Two, in violation
of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii) ("Count Three");
(iv) three counts of conspiracy to commit Hobbs Act robbery, in

1

violation of 18 U.S.C. § 1951 ("Counts Four, Seven, and Ten");
(v) three counts of Hobbs Act robbery, in violation of 18 U.S.C.
§§ 2 and 1951 ("Counts Five, Eight, and Eleven"); and (vi) three
counts of brandishing a firearm during the robberies charged in
Counts Four, Five, Seven, Eight, Ten, and Eleven, in violation
of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii) ("Counts Six, Nine, and
Twelve").  The Defendants' convictions stemmed from their
involvement in a gang that committed four gunpoint robberies in
Manhattan's Chinatown neighborhood during a six-month period
between the summer of 2001 and the beginning of 2002.[1]

The first of the Defendants' robberies took place at an
illegal gambling parlor located at 75 Eldridge Street in or
around July 2001.  Zhou, 428 F.3d at 365.  On or about July 23,
2001, an unknown individual (the "Caller") phoned someone
associated with the gambling parlor ("Victim-1") and identified
himself as being associated with a member of the Defendants'
gang.  Id. at 366.  The Caller told Victim-1 that a member of
the Defendants' gang would come to 75 Eldridge Street later that
day to pick up $10,000.  Id.  As foretold, the Defendants and
two others went to the gambling parlor later that evening, and

---

[1] The following facts are excerpted from the Defendants'
Presentence Investigation Reports ("PSRs") and the Court of
Appeals' opinion affirming in part, and reversing in part, the
Defendants' convictions and sentences on direct appeal.  See
United States v. Zhou, 428 F.3d 361 (2d Cir. 2005).

while each pointed a firearm at Victim-1, demanded that Victim-1 give them $10,000.  Id.  When Victim-1 said that he did not have the money, two of the Defendants' associates hit Victim-1 with a firearm on the head and in the stomach, respectively.  Id.  One of the Defendants' associates then took a necklace from Victim-1's neck, and the group fled the scene.  Id.

The next robbery took place on or about September 30, 2001. Id.  The Defendants and two other men robbed another illegal gambling parlor located at the back of a barbershop at 21 Eldridge Street.  Id.  During that robbery, the Defendants and their partners entered the barbershop, displayed firearms, and told everyone present to hand over their valuables.  (See Chen PSR ¶ 24.)  One of the Defendants' associates hit one victim in the face and punched another victim in the stomach. Id.  The Defendants and their associates stole over $10,000. Zhou, 428 F.3d at 366.

The third robbery occurred on November 21, 2001.  Id. After trying and failing again to rob the illegal gambling parlor located at 75 Eldridge Street, the Defendants and three other men succeeded in robbing a different illegal gambling parlor located inside a florist at 109 East Broadway.  Id. While Lin remained outside, Chen and two co-conspirators entered the florist, announced the robbery, and took money from the occupants.  (See Chen PSR ¶ 25; Lin PSR at 8.)  During the

3

robbery, two of the gang members displayed firearms, and one of the gang members struck a victim in the face. (See Chen PSR ¶ 25.)

The fourth and final robbery took place at 85 Allen Street, an illegal gambling parlor located at the back of another barbershop, on January 23, 2002. Zhou, 428 F.3d at 366. During that robbery, the Defendants and two others made their way into the gambling parlor and, while brandishing firearms, stole approximately $10,000 from the occupants. Id. The Defendants and their associates told the victims not to call the police or else they would be killed, and one of the Defendants' associates struck a victim in the head with his firearm. (See Chen PSR ¶ 26.)

### ii. Defendant Chen

Prior to trial, the Government made a plea offer to Chen that would have resulted in a significantly lower sentence. (See dkt. no. 214 at 2.) According to Chen, the Government's plea offer had a Sentencing Guidelines range of fourteen to sixteen years imprisonment. (See Def. Chen Xiang's Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(a)(1)(A)(i) (Compassionate Release) ("Chen Mem."), dated Aug. 26, 2021 [dkt. no. 207], at 3.) Chen rejected the Government's offer. (Id.) As it indicated that it would, the Government superseded and

4

added additional counts pursuant to 18 U.S.C. § 924(c).  (See dkt. no. 214 at 2.)

After being convicted of all counts at trial, Chen was sentenced on September 19, 2003, to 1,054 months imprisonment by the late Judge Richard Conway Casey.  (See dkt. no. 68.)  On appeal, the Court of Appeals vacated the extortion-related counts, and Chen was then resentenced to 754 months (sixty-two years, ten months) imprisonment: seventy months for the robbery and conspiracy to commit robbery convictions, and three consecutive sentences totaling 684 months for the three remaining Section 924(c) convictions.  (See dkt. no. 107.)  Chen appealed this sentence in 2008, arguing, among other points, that his Section 924(c) convictions were improper.  The Court of Appeals denied the appeal in its entirety and, with respect to the Section 924(c) convictions, determined that they were proper under the Supreme Court's decision in Deal v. United States, 508 U.S. 129 (1993).  United States v. Zhou, 268 F. App'x 139, 140-41 (2d Cir. 2008).

In 2009, Defendant Chen moved to vacate his sentence under 28 U.S.C. § 2255.  That motion, among other arguments, again challenged his Section 924(c) convictions.  (See dkt. no. 1 in 09-cv-7579.)  The Court dismissed the motion on August 6, 2010, and, with respect to the Section 924(c) convictions, held that, because the claim was made and rejected on direct appeal, Chen

5

was foreclosed from relitigating it in his habeas motion and that there was no intervening change of law that would permit the Court to reconsider Chen's sentence.  (See dkt. no. 148 at 15.)

On or about June 23, 2020, the Court of Appeals granted Chen leave to file a successive Section 2255 petition to bring claims regarding the applicability of the Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (2019). (See dkt. no. 199.)  To date, Chen has not filed any petition asserting claims under Davis.

Defendant Chen is currently incarcerated in FCI Berlin in New Hampshire.  He has served approximately nineteen years of his 62-year sentence.  His projected release date is April 3, 2056.

### iii. **Defendant Lin**

Prior to trial, the Government made a plea offer to Lin that would have resulted in a significantly lower sentence. (See dkt. no. 210 at 2.)  According to Lin, the Government's plea offer carried a minimum sentence of only twelve-and-a-half years incarceration.  (See Mem. of Law in Support of Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(a)(1)(A)(i) ("Lin Mem."), dated July 26, 2021 [dkt. no. 206-1], at 2; dkt. no. 206, Ex. F at 2.)  Lin rejected the Government's offer multiple times, however, and, according to Lin, laughed at the prospect

6

of going to prison for that long.  (See Lin Mem. at 11; dkt. no.
206, Ex. F at 7.)

Because of the nature of Lin's rejection of the
Government's plea offer, Lin's trial counsel moved before Judge
Casey, pursuant to § 4244(a), for a hearing to determine Lin's
mental condition and requested that he be given a psychological
examination.  See Zhou, 428 F.3d at 368.  Lin was evaluated by
two different forensic psychologists and, in both instances, was
found competent for trial and sentencing.  See id.  Indeed, the
first forensic psychologist who evaluated Lin found, among other
things, that his intellectual functioning was "Below Average to
Low Average" and that he (i) was not in denial or a delusional
state, (ii) understood the severity of what he was facing, and
(iii) was rational in his examination of his situation.[2]  (See.
dkt. no. 206, Ex. F at 5, 7.)

On September 25, 2003, Lin appeared for sentencing before
Judge Casey who sentenced him to (i) fifty-seven months
imprisonment to be served concurrently on Counts One, Two, Four,
Five, Seven, Eight, Ten, and Eleven—the extortion and robbery
counts—and (ii) an aggregate consecutive term of imprisonment of
984 months on Counts Three, Six, Nine, and Twelve—the firearms

---

[2] Lin's second psychological examination took place between July
30 and August 26, 2004, while his first direct appeal was
pending before the Court of Appeals.  See Zhou, 428 F.3d at 368.

counts.  Zhou, 428 F.3d at 369.  Because of the severity of
Lin's mandatory consecutive sentence on the firearm counts,
Judge Casey noted on the record that "exceptional lengths were
gone through to make sure that [Lin] understood how severe the
sentence could be" before he went to trial.  (Dkt. no. 210, Ex.
1 at 9.)

Lin subsequently appealed his conviction and sentence,
arguing, in part, that the evidence of his guilt on the
extortion counts was legally insufficient.  The Court of Appeals
agreed with Lin's argument on the legal insufficiency of the
extortion evidence, and, on November 1, 2005, reversed Lin's
convictions on Counts One, Two, and Three.  Zhou, 428 F.3d at
365, 369-79.  The Court of Appeals affirmed the judgment of the
District Court in all other respects and remanded the case for
resentencing.  Id. at 365, 379-81.

On September 6, 2006, Lin appeared for resentencing before
Judge Casey.  This time, Judge Casey sentenced Lin to (i) fifty-
one months imprisonment on Counts Four, Five, Seven, Eight, Ten,
and Eleven to be served concurrently, (ii) a mandatory and
consecutive term of eighty-four months imprisonment on Count
Six, (iii) a mandatory and consecutive term of 300 months
imprisonment on Count Nine, and (iv) and a mandatory and
consecutive term of 300 months imprisonment on Count Twelve for
a total of 735 months, just over sixty-one years.  (Dkt. no.

8

206, Ex. B at 9.)   Judge Casey again noted for the record that

the Court went to great lengths to ensure that Lin understood

the consequences he would face if he went to trial:

> [T]his court on numerous occasions prior to
> trial asked defense counsel, with the
> assistance of an interpreter, to talk with
> this defendant and his co-defendant and
> explain the offer by the government for a plea
> agreement and to explain to them that several
> of their co-conspirators would be testifying
> against them and that it would appear that the
> government's case was a very strong one and
> that if convicted, they would face a very
> serious sentence.

(Id., Ex. B at 8.)

In 2008, following resentencing, the Court of Appeals

affirmed Lin's conviction and sentence, holding that the

mandatory minimum sentence imposed pursuant to Section 924(c)

was constitutional and reasonable.[3]   Zhou, 268 Fed. App'x. at

140.

Defendant Lin is currently incarcerated in FCI Edgefield in

South Carolina.   He has served approximately over nineteen years

of his sixty-one-year sentence.   His projected release date is

July 31, 2056.

---

[3] Defendant Lin also filed a Section 2255 motion and a Section
2241 petition, both of which were denied.   See United States v.
Wu, 2009 WL 3053741 (S.D.N.Y. Sept. 17, 2009); Wu v. Ebbert,
2012 WL 5052160 (M.D. Pa., Oct. 18, 2012).

II.  **Applicable Law**

Under 18 U.S.C. § 3582(c), as amended by the First Step
Act, a district court "may not" modify a term of imprisonment
once imposed, except under limited circumstances.  One such
circumstance is the so-called compassionate release provision,
which provides that a district court "may reduce the term of
imprisonment" where it finds "extraordinary and compelling
circumstances."  Id. § 3582(c)(1)(A)(i).  A motion under this
provision may be made by either the Bureau of Prisons or a
defendant, but in the latter case only "after the defendant has
fully exhausted all administrative rights to appeal a failure of
the Bureau of Prisons to bring a motion on the defendant's
behalf or the lapse of thirty days from the receipt of such a
request by the warden of the defendant's facility, whichever is
earlier."  Id. (emphasis added).  Thus, where a compassionate
release motion is brought by a defendant who has not "fully
exhausted all administrative rights," the district court "may
not" modify his term of imprisonment.

Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First
Step Act, a district court "may not modify a term of
imprisonment once it has been imposed except" as provided by
statute.  Id. § 3582(c).  As relevant here:

> [T]he court, upon motion of the Director of
> the Bureau of Prisons, or upon motion of the
> defendant after the defendant has fully

exhausted all administrative rights to appeal
a failure of the Bureau of Prisons to bring a
motion on the defendant's behalf or the lapse
of 30 days from the receipt of such a request
by the warden of the defendant's facility,
whichever is earlier, may reduce the term of
imprisonment (and may impose a term of
probation or supervised release with or
without conditions that does not exceed the
unserved portion of the original term of
imprisonment), after considering the factors
set forth in section 3553(a) to the extent
that they are applicable, if it finds that
. . . extraordinary and compelling reasons
warrant such a reduction . . . and that such
a reduction is consistent with applicable
policy statements issued by the Sentencing
Commission[.]

Id. § 3582(c)(1)(A)(i).

To satisfy the requirements of sentence reduction pursuant
to the compassionate release provision, the defendant must
demonstrate "extraordinary and compelling reasons." Id.  The
Second Circuit has held that the First Step Act of 2018 "allows
[district] courts independently to determine what reasons, for
purposes of compassionate release, are 'extraordinary and
compelling'" and that the BOP Director is no longer the sole
arbiter in determining whether the threshold is met." United
States v. Brooker, 976 F.3d 228, 234, 237 (2d Cir. 2020); see
id. ("Neither Application Note 1(D), nor anything else in the
now-outdated version of Guideline § 1B1.13, limits the district
court's discretion."). Courts may "look[ ] to § 1B1.13 for
guidance in the exercise of [their] discretion, but [are] free

11

to consider 'the full slate of extraordinary and compelling
reasons that an imprisoned person might bring before them in
motions for compassionate release.'"   United States v.
Rodriguez, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020)
(quoting Brooker, 976 F.3d at 237)).

Whether such "extraordinary and compelling reasons" exist,
however, is only "[t]he threshold question."   United States v.
Daugerdas, 2020 WL 2097653, at *2 (S.D.N.Y. May 1, 2020).
"[T]his Court's analysis does not end with a finding that
'compelling and extraordinary reasons' warrant compassionate
release.   This Court must also 'consider[] the factors set forth
in section 3553(a).'"   Id. at *4.

Those Section 3553(a) factors include, among others:

(1)  the nature and circumstances of the offense and the
     history and characteristics of the defendant; [and]
(2)  the need for the sentence imposed –
     a. to reflect the seriousness of the offense, to promote
        respect for the law, and to provide just punishment
        for the offense;
     b. to afford adequate deterrence to criminal conduct;
        [and]
     c. to protect the public from further crimes of the
        defendant....

18 U.S.C. § 3553(a).

## III. **Discussion**

The Government does not contest that both Defendants have
exhausted their administrative remedies and that the Court has

the power to grant relief.  (See dkt. no. 210 at 4; dkt. no. 214 at 3.)

In arguing for a reduction in sentence, both Defendants rely on the harshness of their sentences – sixty-two years for Chen and sixty-one years for Lin – caused by the then applicable "stacking" provision of 18 U.S.C. § 924(c) – and the disparity between their sentences and those of their Co-Defendants who did not go to trial.  (See Chen Mem. at 9; Lin Mem. at 9-10.)

Both Defendants also note they have been significantly rehabilitated during their incarceration.  Chen notes that he has incurred only two minor infractions during that period of incarceration, while Lin was sanctioned for fighting with another person in 2003 and 2007 and for possessing a dangerous weapon in 2010.  (See Chen Mem. at 14; dkt. no. 210 at 7-8.) Both Defendants argue that their release is supported by the § 3553(a) factors.  (See Chen Mem. at 15; Lin Mem. at 15-19.)

With respect to stacking, the Defendants point out that the First Step Act modified the regime under which they were sentenced and that if the new statute were applied, Defendant Chen would receive a twenty-one-year mandatory minimum consecutive sentence rather than the fifty-seven-year[4] mandatory minimum sentence he received for three counts of brandishing a

---

[4] Chen was also resentenced to seventy months imprisonment for robbery and conspiracy to commit robbery.  (See dkt. no. 107.)

firearm in violation of Section 924(c), (see dkt. no. 214 at 6; dkt. no. 215 at 2), and Defendant Lin would receive a twenty-five-year sentence rather than the sixty-one years he received (dkt. no. 216 at 4).

With respect to disparity, Chen received a sixty-two-year sentence following trial while a Co-Defendant, Lin Li, received a sentence of 108 months pursuant to a plea agreement. (See dkt. no. 92.)  Recall that while Chen brandished a firearm, Lin Li perpetrated actual violence by shooting one of his victims and pistol whipping another.  (See dkt. no. 215 at 4.)

While acknowledging that while perhaps he should have accepted the Government's plea offer of fourteen to sixteen years, (id.), Chen also argues that the Court should consider the harshness of the penalty he received for going to trial. (Id.)  In so doing, he cites a decision by Judge Raymond Dearie finding extraordinary and compelling circumstances justifying compassionate release in a 924(c)-stacking case.  (Id.)  Judge Dearie took note of the "drastic severity" of the defendant's sentence in comparison to his more culpable co-defendant and noted "the extent to which that brutal sentence was a penalty for Haynes's exercise of his constitutional right to trial." United States v. Haynes, 456 F. Supp. 3d 496, 515 (S.D.N.Y. 2020).

14

Both Defendants have also submitted letters from the line
prosecutors in their cases, Preet Bharara and Leslie C. Brown,
in support of their motions.  (Dkt. nos. 211, 212.)  In those
letters, Mr. Bharara and Ms. Brown argue that while it was
appropriate that these Defendants received enhanced penalties at
the time they were sentenced, it also is fair that their
sentences be reconsidered in light of changed circumstances.
(See dkt. no. 211 at 2; dkt. no. 212 at 2.)  They argue that the
changes brought by the First Step Act coupled with the disparity
between the plea offers and these Defendants' sentences after
trial warrant relief in these cases.  (Id.)

The Government points out that Congress determined that
defendants who were sentenced before the First Step Act was
enacted would not be eligible for relief under the new statutory
sentencing scheme (dkt. no. 214 at 6).  See First Step Act of
2018, Pub. L. 115391, 132 Stat. 5222 (Dec. 21, 2018), § 403(b)
("This section, and the amendments made by this section, shall
apply to any offense that was committed before the date of
enactment of this Act, if a sentence for the offense has not
been imposed as of such date of enactment."); see also, e.g.,
United States v. Cruz-Rivera, 954 F.3d 410, 413 (1st Cir. 2020)
("Congress did not intend the amendment in § 403(a) of the First
Step Act to compel the 're-opening [of] sentencing proceedings
concluded prior to [the] new law's effective date.'" (quoting

15

Dorsey v. United States, 567 U.S. 260, 280 (2012)) (alterations in Cruz-Rivera)); United States v. Hodge, 948 F.3d 160, 162 (3d Cir. 2020) ("we hold the new § 924(c) mandatory minimum does not apply to defendants initially sentenced before the First Step Act's enactment"); United States v. Jordan, 952 F.3d 160, 171-74 (4th Cir. 2020) (same); United States v. Richardson, 948 F.3d 733, 745-53 (6th Cir. 2020) (same); Rodriguez v. United States, 2020 WL 8768320, at *2 (S.D.N.Y. Aug. 18, 2020) (explaining that Section 403's modification of Section 924(c)'s sentencing scheme is "not retroactive to offenses that were final at time of the act's enactment.").

The Government argues that Congress' decision not to apply the First Step Act retroactively means that defendants sentenced under the earlier stacking provision cannot provide extraordinary and compelling circumstances on the basis of the harshness of their sentences or the disparity between those sentences and the ones they would receive under the new statutory scheme. (See dkt. no. 210 at 7.)  Judge Jed Rakoff has rejected that rationale:

> [I]t is 'hard to see the logic' of the government's proffered rationale: 'that this stacking provision was wrong and unfair and often led to overly long sentences, but [Congress was] only going to change this prospectively . . . because it would be administratively difficult if we had to deal with so many people making applications.' . . . The Court rejects this

16

> 'callousness' and will not adopt the position
> that 'people [should] continue to rot in
> prison' to avoid a rule where 'judges [might]
> be burdened with lots of motions.'

United States v. Ballard, 552 F. Supp. 2d 461, 467 (S.D.N.Y.
2021).

Judge Richard Sullivan, however, while a district judge,
has held that the First Step Act's "change in the law is not
enough, standing alone, to automatically merit [the defendant's
release]." United States v. Musa, 502 F. Supp. 3d 803, 812
(S.D.N.Y. 2020). However, Judge Sullivan clarified that "the
Court's discretion is obviously not constrained by the non-
retroactive nature of the changes. . ." and noted that "the
recent changes in the law support [the defendant's]
application." Id. Judge Sullivan ultimately denied that
defendant's application because "[the defendant] has not
demonstrated a prolonged track record of rehabilitation that
would merit compassionate release (indeed, just the opposite)"
having "accumulated more than 60 disciplinary infractions while
in BOP custody." Id. at 813. Judge Sullivan further noted that
the defendant had continued to proclaim his innocence of one of
the crimes of conviction and "[e]ven more troubling is the
government's assertion that" the defendant forged a letter of
support supposedly written by the former captain of his prison.
Id. at 813-14.

17

In contrast to Judge Sullivan's defendant, Chen has drawn only two rather minor infractions during his nineteen-years imprisonment. (See Chen Mem. at 14.) He has also taken a number of courses during that time, worked at various jobs, receiving good evaluations, and taken numerous courses. (Id. at 14.) Lin has drawn three somewhat more serious infractions over twenty-one years and has taken a few courses. (Lin. Mem., Ex. E.) Also despite several health challenges, he has participated in programs and had work assignments. (Lin Mem. at 3, 18.)

Based on the above, the Court finds that, although the First Step Act's change in the sentencing regime is insufficient, standing alone, to constitute "extraordinary and compelling reasons warranting release," combined with the harshness of these Defendants' sentences and the disparity between their sentences and that of Co-Defendant Lin Li, these Defendants have presented "extraordinary and compelling reasons warranting release." Even for murderers, sentences of sixty-two years and sixty-one years are virtually unheard of.[5] And while

---

[5] (See dkt. no. 216 at 8 ("[T]he sentence Mr. Lin received is far longer than the median sentence for murder convictions in the Southern District of New York, (median sentence for thirty-nine murder cases in 2020 was 155 months) and it is far more than the median amount of time served on murder sentences imposed in state courts nationwide (approximately thirteen years).").) Quarterly Data Report, U.S. Sentencing Comm'n, June 14, 2022, at tbl. 6, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC Quarter Report 2nd FY22.pdf

these Defendants indeed "terrorize[d] the neighborhood systematically," Zhou, 428 F. 3d at 366, sixty-two years and sixty-one years are grossly disproportional and greater than what is necessary to fulfill the sentencing objectives.  The disparity between Chen's sixty-two-year sentence (essentially for brandishing a firearm during robberies) and Lin's sixty-one--year sentence (for the same) and, on the other hand, Co-Defendant Lin Li's nine-year sentence (for committing actual violence by shooting one victim and pistol-whipping another) and Co-Defendant Xiao Qin Zhou's sentence of seventy-eight months for committing forty robberies, 02 Cr 271 (S.D.N.Y. Nov. 15, 2007) (Dkt. no. 121), is striking – – a fifty-plus-year difference.  Thus, the Court finds that the harshness of these Defendants' sentences, the disparity between these Defendants' sentences and those of some of their more culpable Co-Defendants, and the new sentencing regime embodied in the First Step Act (which, if applied to Defendants would result in sentences of approximately twenty-one years for Chen and twenty-five years for Lin) constitute "extraordinary and compelling reasons warranting release" under § 3582(c)(1)(A)(i).

With respect to the § 3553(a) factors, while Defendants' conduct of conviction was undeniably serious, Chen's current sentence of sixty-two years and Lin's sentence of sixty-one

years is greater than what is required to meet the sentencing factors.

A sentence of over nineteen years is serious enough to deter others from engaging in similar conduct. With respect to specific deterrence, by the time Defendants are released, statistically they will have "aged out" of criminal behavior. Lin and Chen are both approximately forty-two years old. (See Lin Mem. at 2; Chen Mem. at 8.) Both Defendants have announced their intention to return to China,[6] Chen to assist his sister and her family in caring for his now approximately seventy-four-year-old father and Defendant Lin to be with his family. (See Chen Mem. at 15; Lin Mem. at 19.) Chen's uncle and a childhood friend have both offered him a good paying job in China, and he plans to work there so he can send money to his daughter – whom he has not seen since she was three months old – who is a college student in Maryland. (See Chen Mem. at 15.) Thus, the Court is confident that these Defendants are no longer a danger to the community.

As also mentioned above, there is a gross disparity between Chen's sixty-two-year sentence and Lin's sixty-one-year sentence and the 108 months sentence meted out pursuant to a plea to a

---

[6] Lin has consented to deportation, (Lin Mem., Ex. 2 ¶ 3, Ex. 9), and Chen is willing to consent to deportation, (Chen Mem. at 14).

Co-Defendant who actually engaged in violent acts.   Reducing these Defendants' sentences to about nineteen years will somewhat ameliorate that disparity.

Accordingly, the Defendants' sentences are both reduced to time served plus three months.   The three months is to provide time for arrangements such as travel documents.

IV.   **Conclusion**

For the reasons stated above, Defendant Chen Xiang's motion (dkt. no. 207) and Defendant Lin Xian Wu's motion (dkt. no. 206) pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for compassionate release are granted, and their sentences are reduced to time served plus three months.

**SO ORDERED.**

Dated:     New York, New York
           July 7, 2022

                         _Loretta A. Preska_
                         LORETTA A.  PRESKA
                         Senior United States District Judge

21